# Lemons et al. v. Wilson.

May 25, 1943.

Franklin Rives and John O. Hardin for appellants.

Trimble & Trimble and S. T. Fruit for appellee.

OPINION OF THE COURT BY JUDGE REES—Affirming.

On September 23, 1923, O. M. Wilson conveyed to Mrs. Mildred Lemons a large body of land described in six tracts located in the northern part of Christian county. The consideration was $6,000, and the purchaser executed six promissory notes for $1,000 each, payable on the first day of January in each year commencing with 1925 and ending with 1930. The deed provided that the entire debt should be precipitated upon the failure of the purchaser to pay any note when due. Three of the notes were paid, and when Mrs. Lemons failed to pay the note due January 1, 1928, Wilson brought suit to recover the remainder of the purchase price and to

enforce his vendor's lien. When the deed was executed there was a mortgage of $1,800 on a portion of the land, which had been executed to the Planters Bank of Morton's Gap and by it assigned to J. E. Williams. Mrs. Lemons failed to record the deed of September 23, 1923, and it burned when her home was destroyed by fire. Wilson executed another deed in July, 1924, and it was recorded in 1926. The dwelling, a store, a stock barn, and probably two tobacco barns on the land burned within a year or two after Mrs. Lemons took possession of the property. The insurance policies apparently were not assigned when the deed was executed, and the insurance was collected by Wilson. He claimed that he delivered all of it to Mrs. Lemons, which she denied. This was one of the issues in the suit instituted by Wilson in 1928. In answer to the averment that she was indebted to the plaintiff in the sum of $3,000, Mrs. Lemons pleaded a compromise and settlement and alleged that in 1927 she paid to Wilson $1,200 in cash and agreed to assume the mortgage indebtedness of $1,800. She claimed that she borrowed the money from James W. Lemons, who handed it to her in cash at the courthouse and she handed it to Wilson. James W. Lemons was her former husband from whom she had been divorced several years. Wilson pleaded and introduced proof tending to show that Mrs. Lemons did agree to pay him $1,200 and assume payment of the mortgage debt and induced him to release his vendor's lien on the margin of the deed book to enable her to borrow the $1,200. He did not surrender the notes. Mrs. Lemons failed to carry out the agreement, and after the lapse of several months Wilson went to the clerk's office and wrote on the margin of the deed book that the release was made in error and was not effective for any purpose. In the meantime, Mrs. Lemons had conveyed the land to her former husband. James W. Lemons intervened in the action and alleged that he had purchased the land in good faith and asked that he be adjudged to be the owner free from any claim of the plaintiff, O. M. Wilson. J. E. Williams died in April, 1929, and on September 5, 1929, Mrs. Fairleigh Williams, executrix of the will of J. E. Williams, filed a petition asking to be made a party, setting up the $1,800 mortgage upon a portion of the land and asking that the estate of J. E. Williams be adjudged a prior lien on the land described in the mortgage. A large amount of proof was taken on the various issues

made by the pleadings, and on April 4, 1930, a judgment was entered adjudging that James W. Lemons was not the owner of any of the land and dismissing his petition; that Mrs. Lemons was indebted to O. M. Wilson in the sum of $3,000, with interest from January 1, 1928; that the J. E. Williams estate had a lien on four tracts of land superior to Wilson's lien; that Wilson had a first lien on tracts 1 and 6 described in his deed to Mrs. Lemons, and a lien inferior to the mortgage lien on the remaining four tracts, and the land was ordered sold to satisfy the liens. James W. Lemons and Mrs. Mildred Lemons prayed and were granted appeals to the Court of Appeals, but the appeals were never perfected.

When the six tracts of land were conveyed to Mrs. Lemons on September 23, 1923, O. M. Wilson, the grantor, was sheriff of Christian county. His term of office expired on the first Monday in January, 1926. At or about the time the judgment in his favor against Mrs. Lemons was rendered, it was discovered that he was short in his accounts as sheriff, and suit was instituted by the county against him and his corporate surety, and a judgment for $10,000 was obtained. The surety satisfied the judgment and brought suit in the Federal court and attached all the land owned by Wilson at the time he entered upon the duties of the office of sheriff, including the land conveyed by him to Mrs. Lemons in 1923. After this suit had been pending for several years, the corporate surety's claim was compromised and settled, and the amount agreed upon in the settlement was paid by relatives of Wilson. Pending this litigation and settlement the judgment obtained by Wilson against Mrs. Lemons remained in abeyance. Wilson made no effort to enforce it and Mrs. Lemons did not offer to satisfy it, as the corporate surety's lien was superior to her interest in the land. The case was stricken from the docket on October 24, 1938, with leave to reinstate without notice. On January 27, 1941, after the litigation growing out of Wilson's shortage as sheriff had ended and the corporate surety's lien had been released, the case of O. M. Wilson against Mildred Lemons was reinstated on the docket. On March 7, 1941, John W. Lemons, son of Mildred Lemons, filed a petition asking to be made a party defendant. He alleged that he had purchased and was the owner of the judgment rendered April 4, 1930, against O. M. Wilson in favor of Mrs. Fairleigh Williams, executrix of J. E. Williams, deceased, for $1,800,

with interest from January 10, 1928, and he asked that he be paid $1,800 with interest from January 10, 1928, out of the proceeds of the sale of the four tracts of land covered by the mortgage. Wilson filed a pleading styled "Answer of O. M. Wilson to the intervening petition of John W. Lemons and his setoff and counterclaim thereto and against Mildred Lemons," in which he denied that John W. Lemons was the owner of the judgment in favor of Williams' executrix, and alleged that Mildred Lemons purchased the judgment for $400, had it assigned to her, and later fraudently assigned it without consideration to her son, John W. Lemons, who took it subject to any and all defenses of the plaintiff against the judgment in the hands of Mildred Lemons. John W. Lemons and Mildred Lemons filed separate replies, and several other pleadings were filed later. An effort was made to raise a number of issues which had been determined by the judgment of April 4, 1930, but it is conceded now by appellants that they are precluded by that judgment from relitigating those questions.

The new issues raised by the pleadings filed subsequent to the reinstatement of the case on the docket in January, 1941, are two in number. One involves the ownership of the Williams judgment and, as a consequence, the amount to which the owner is entitled, and the other involves a question of damages for alleged shortage in acreage of the land conveyed to Mildred Lemons by O. M. Wilson September 23, 1923. In one of her pleadings filed subsequent to the reinstatement of the case in 1941, Mrs. Lemons alleged that Wilson represented to her that the six tracts of land contained 500 acres, whereas 127.14 acres of parcel 1 of tract No. 6 were included in the boundaries of tract No. 2. She alleged other shortages, amounting in all to 181.14 acres, and she asked judgment for $2,447.12 on her counterclaim. The court adjudged that the judgment rendered in April, 1930, in favor of Mrs. Fairleigh Williams, executrix, for $1,800, had been sold and assigned to Mildred Lemons, who paid the sum of $400 therefor, and that the judgment had been satisfied and was ineffective for any purpose except to the extent of the amount paid by her; $400. As Mrs. Lemons had assigned her rights to her son, John W. Lemons, the court adjudged him a lien for $400, with interest from June 12, 1939. The court also adjudged that there was no shortage in the land conveyed, and dismissed Mrs. Lemons' counterclaim and

setoff. The master commissioner was again ordered to sell the land.

Mrs. Lemons claims that her son gave her $500 with which to purchase the Williams judgment; that she purchased it for $400 and by mistake it was assigned on the margin of the judgment book to her; and that when her son discovered the mistake he required her to go to the county seat, a distance of 25 miles, to correct the assignment. Mrs. Lemons' attorney and Mr. J. D. Williams, to whom the judgment had been assigned by Mrs. Fairleigh Williams, executrix, testified that the agreement to assign the judgment was made in Hopkinsville in June, 1939, in the attorney's office. The agreement was reduced to writing after lengthy negotiations between Mr. Williams and Mrs. Lemons and was signed by them. Mr. Williams and Mrs. Lemons' attorney both testified that John W. Lemons' name was never mentioned, and Mrs. Lemons never intimated that he was an interested party. After the agreement was signed and Mrs. Lemons had paid $400 to Mr. Williams, the parties went to the circuit clerk's office where Mrs. Lemons' attorney wrote on the margin of the judgment book an assignment of the judgment to Mrs. Lemons, and J. D. Williams executed the assignment which was attested by the clerk. Nearly eighteen months later Mrs. Lemons signed the following indorsement on the margin of the judgment book:

> "Whereas John W. Lemons was the purchaser of this judgment and paid the consideration therefor by mistake same was transferred and assigned to me. Now in consideration that he paid the consideration therefor, and was the purchaser of said judgment, and to correct said mistake I hereby transfer and assign said judgment to said John W. Lemons, November 27, 1940."

The chancellor's conclusion that the sale and transfer of the judgment in favor of the Williams estate was to Mrs. Lemons is amply sustained by the record. Likewise he correctly found that the judgment rendered in April, 1930, limited the credit to which she was entitled to the amount actually paid by her. That judgment provided "should the defendant, Mildred Lemons, pay the debt for the said Mrs. Fairleigh Williams, executrix,

and interest thereon, she is to be credited on this judgment for whatever amount she may pay, and to that extent the judgment will be reduced.''

The issue as to the alleged shortage presents an unusual situation. Mrs. Lemons testified that the original deed, which burned, described the six tracts of land as containing 500 acres, but she is contradicted and the evidence is convincing that the descriptions in the two deeds were the same. That uncertainty existed as to the acreage is shown by the following paragraph taken from the judgment of April 4, 1930:

"It appearing from the pleadings and other records in this case that the said tract No. 6 the last tract described in plaintiff's petition, is not covered by the mortgage of the Planters Bank of Morton's Gap, and that O. M. Wilson has a superior lien upon this tract as well as tract No. 1, but it also appears that there is some defect in the description and in the records in connection with said Tract No. 6, and that some of said tract has been sold off and the remainder thereof is possibly covered by tract No. 2, in which count the said tract No. 6, would be embraced by the Williams mortgage and he would have a superior lien for that and on account of this contention it is adjudged by the Court that said tract No. 6 be surveyed at a time to be agreed upon by the surveyor and all the parties in interest herein, and that it be determined how much there is in tract No. 6, and whether it is an independent tract or belongs to some other tract, and the surveyor will report his acts and the true boundary of said tract to the Court and this is directed to be done before the sale of the land herein in order to prevent as far as possible, any substantial error.''

Whether the surveyor was agreed upon by the parties or appointed by the court does not appear, but on January 27, 1941, Frank Campbell, a surveyor, filed a report showing that he made a survey on June 26, 1930, and that by mistake or oversight his report was not filed at that time. The six tracts are described separately in the deed. The number of acres in tract No. 1 is not stated. Mr. Campbell testified that his survey of tract No. 1 shows that it contains 75.44 acres. Tract No. 2 as described in the deed calls for 100 acres more or less, and the surveyor testified that his survey shows that it

contains 182.13 acres and that there is some duplication between tract No. 2 and tract No. 6. The deed states that tract No. 3 contains 30 acres and Mr. Campbell's survey shows that it contains 30 acres and duplicates no other part of the land. The deed states that tract No. 4 contains 35 acres and tract No. 5 30 acres. These two tracts are located several miles from the remaining four tracts and were not surveyed by Mr. Campbell. It is not claimed that the acreage as stated in the deed is incorrect. Tract No. 6 is described in the deed in two parcels, and the whole tract is described as part of a 175-acre survey with the exception of two portions theretofore sold to other persons. The other reference in the deed to acreage is ''the part here conveyed being all of 175-acre tract except the two reservations above named.'' The number of acres in the two reservations is not stated. Mr. Campbell's survey of tract No. 6 shows that it is in two parcels which do not join. They are separated by tract No. 3. His survey shows that parcel No. 2 of tract No. 6 contains 54.52 acres, and that parcel No. 1 of tract No. 6 contains 139.28 acres, or a total of 193.8 acres for the entire tract, but there is a duplication between tract No. 2 and parcel No. 1 of tract No. 6 of 127.14 acres. It appears that 12.14 acres had been sold from parcel No. 1 of tract No. 6, leaving 127.14 acres in the tract, and that thereafter successive deeds carried two descriptions, one including the 12.14 acres which had been sold and one excluding it. The only reference to acreage in the deed are 100 acres for tract No. 2, 30 acres for tract No. 3, 35 acres for tract No. 4, 30 acres for tract No. 5, and a portion of the 175-acre survey for tract No. 6, or, at most, 370 acres. A survey of tracts 1, 2, 3, and 6 shows 329.97 acres, and when 65 acres in tracts 4 and 5 are added, 388.97 acres are covered by the deed. It is conceded that the sale was in gross and not by the acre. Appellee insists that Mrs. Lemons' cause of action is barred by limitations, even if any shortage existed, since the record shows she had notice of the shortage when the judgment of April 4, 1930, was rendered. Be that as it may, we think the evidence fails to show that a shortage existed. At most, there was a mere duplication in the descriptions of two tracts, which was apparent on the face of the deed and of which the parties were aware, although they may not have known the exact number of acres involved.

Appellee has cross-appealed from so much of the

judgment as awards a prior lien for $400 to John W. Lemons. The court found that Mrs. Lemons had assigned the Williams judgment to her son but that it was subject to all the defenses to which it was subject in her hands. Appellee concedes that Mrs. Lemons is entitled to a prior lien for $400, with interest from June 12, 1939, and to have the judgment against her credited with that amount. The judgment as entered protects the rights of appellee. The only person whose rights might be adversely affected is Mrs. Lemons, and she is not complaining in this respect.

Appellants' motion to require appellee to pay for part of transcript not included in appellants' schedule has been passed to the merits. Appellants filed a schedule requesting a partial transcript of the record, and appellee, in accordance with section 737 of the Civil Code of Practice, filed a schedule requesting a transcript of the entire record. The portions of the record omitted in appellants' schedule have a material bearing on the issues involved on this appeal, and the motion is overruled.

The judgment on both the original appeal and cross-appeal is affirmed.